# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-582

DEVIN LUTTRELL

VERSUS

## McNEESE STATE UNIVERSITY, ET AL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2022-2579
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## GARY J. ORTEGO
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Gary J. Ortego,
Judges.

**AFFIRMED.**

**Jeannie C. Prudhomme**
**Ashley C. Escalona**
**Assistant Attorney General**
**556 Jefferson St., 4th Floor**
**Lafayette, LA 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **State of Louisiana, through the Board of Supervisors of the University**
  **of Louisiana System**

**Damon L. Beard**
**The Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Devin Luttrell**

**Christopher Shannon Hardy**
**Penny & Hardy**
**600 Jefferson Street, Ste 601**
**Lafayette, LA 70502**
**(337) 231-1955**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
  **Progressive Security Insurance Co.**
  **Jalen Robinson**

**ORTEGO, Judge.**

This is a summary judgment case relative to a motor vehicle accident wherein, in the early morning hours of July 5, 2021, a motor vehicle struck a black cow on the roadway in Calcasieu Parish. The plaintiff, a guest passenger in the motor vehicle, filed a petition for damages against the driver of the vehicle, Jalen Robinson (Robinson), his insurer, Progressive Security Insurance Company (Progressive), McNeese State University (McNeese), the State of Louisiana, through the Board of Supervisors of the University of Louisiana System (the Board), and Stream Family Limited Partnership. Relevant to this appeal, the driver and his liability insurance company sought and were granted summary judgment dismissing them from the case based on the trial court's finding the driver free from fault in the accident.

The State, through its university system, appeals, alleging genuine issues of material fact exist regarding the driver's fault and/or comparative negligence.

## FACTS AND PROCEDURAL HISTORY:

On July 5, 2021, at approximately 3:00 AM, on a dark roadway, Devin Luttrell (Luttrell) was riding as Robinson guest passenger. They were travelling on East McNeese Street in Lake Charles, Louisiana, on their way to work. Due to recent hurricane damage, no streetlights were working. As they proceeded on East McNeese Street, a two lane black-top roadway, they collided with a black cow that was in the middle of their lane of travel.

Robinson testified that he was looking straight ahead, driving within the speed limit, and his headlights were illuminated. Further, he testified that he did not see the cow until just before the impact.

Luttrell filed suit against Robinson, his insurer, Progressive Security Insurance Company (Progressive), McNeese State University (McNeese), the State

of Louisiana, through the Board of Supervisors of the University of Louisiana System (the Board), and Stream Family Limited Partnership.

Robinson and Progressive filed a motion for summary judgment, which the trial court granted, dismissing them from the case based on the trial court's finding Robinson free from fault in the accident.

The Board appeals and raises a single assignment of error.

## STANDARD OF REVIEW:

Summary judgments are reviewed de novo using the same criteria as that of the trial court in adjudicating the appropriateness of the summary judgment. *Samaha v. Rau,* 07-1726 (La. 2/26/08), 977 So.2d 880. Summary judgments are granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P.art. 966(B).

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P.art. 966 C(2).

## DISCUSSION OF THE MERITS:

The Board asserts that the trial court erroneously granted Progressive's motion for summary judgment. It alleges that genuine issues of material fact exist regarding Robinson's comparative fault.

## Progressive's Initial Burden of Proof

Pursuant to La.Code Civ.P. art. 966, Progressive, as movant, has the initial burden of proof. However, Progressive, as defendant Robinson's insurer, does not have the burden to prove at trial that Robinson was comparatively negligent. That burden is on Luttrell. Therefore, Progressive merely has to point out that there is no factual support that Robinson had any fault as to this accident.

In support of its summary judgment motion, Progressive provided the sworn deposition testimony of both Robinson and Lutrell, the only two eyewitnesses, to show that Robinson was free from fault in causing this motor vehicle accident. The following is an excerpt of Lutrell's testimony:

Q. You are going down East McNeese Street, or McNeese Street, car flashes it lights, y'all both have a very short comment about, oh, it must be a cop up here. So you go back to your phone, and then [Robinson] screams, you look up [and] see a blob, a black blob - -

A. Uh-huh.

Q. - a dark blob in the road and y'all hit it?

A. Yes, much.

Q. Is that a fair description of it?

A. Oh, yea. Spot on, I think.

Q. Before the impact with the cow, did you feel any sensation of the vehicle slowing down, speeding up, or moving left and right?

A. No.

Q. Can you give me an idea, Mr. Lutrell, how, the time between when Mr. Robinson screamed versus when there was actual impact? A split second?

A. Split second. He screamed, and then boom.

. . . .

Q. All right. After the accident, did you ask Mr. Robinson when did you see the cow, why didn't you stop, why didn't you swerve?

A.    Yes, I did ask him.

Q.    What did he tell you?

A.    He said he didn't see it.

Q.    All right.  From your observation of when he screamed to when y'all hit the cow, do you think he would have had time in that time frame to avoid the accident?

A.    Between the scream and the cow?

Q.    Right.

A.    No, there is no way.

. . . .

Q.    Do you have any criticism of the way Mr. Robinson was driving that night?

A.    No, I don't.  I feel like there was nothing he could have done.

Q.    You feel like he was paying attention to the road ahead of him?

A.    Yes, sir.

Q.    You feel like he was driving the speed limit?

A.    Yes, sir.

Q.    He was maintaining proper control of the vehicle?

A.    Yes, sir.

. . . .

Q.    So then from your perspective, y'all hit the first cow that y'all came up on?

A.    Yes, sir.

Progressive also presented the sworn deposition testimony of Robinson.

Therein, Robinson testified to the following:

Q.    Okay.  And how fast were you going at the time of the incident or right before the incident happened?

A. It would have been maybe 45, 50, somewhere around there. The speed limit is really low on that street, so I know not to speed there.

. . . .

Q. Were you in a hurry that morning?

A. No, we were on time. We weren't running late or anything. There was no reason to be in a rush.

Q. And the issue with the cow, where was the cow located when it was struck? Was it in your lane of travel?

A. Yes. It wasn't just one specific cow. There was a herd of them all around the street. But the one I hit, specifically, was in my lane of travel.

Q. Did you see any other cows before you struck the cow in the road?

A. No. No indication of any other cows, just driving one second, the next second, boom, there is a cow.

. . . .

Q. Before you made contact with the cow, do you know if that cow was moving or staying still.

A. I don't know.

Q. You said it was instantaneous. Is that what you said, the impact?

A. Yes. By instantaneous I mean not really enough time to grasp the fact that there was something in front of me, just there is a cow, you know.

Q. You were looking straight ahead while you were driving?

A. Straight ahead. Yes, sir.

. . . .

Q. Were you able to apply your brakes at all?

A. I don't believe I was even able to do that.

Q. Were you able to swerve?

A. I don't think so.

5

These sworn testimonies indicate that Robinson was paying proper attention to the roadway ahead of him, that he was traveling at a safe speed, and that he acted in a reasonable manner when he was suddenly presented with an unexpected and unanticipated situation of a black cow, the first cow in a herd of cattle, on a black unlit roadway, in the middle of the night. These testimonies further indicate that Robinson had no knowledge that there was an actual or possible hazard in the roadway until just before impact, and that he had no knowledge that the alleged flashing lights from a vehicle in the opposing lane served as a warning of a possible hazard on the road ahead.

Thus, given the above, we find that Progressive carried its initial burden by presenting evidence sufficient to show that there is no factual support for a finder of fact to find Robinson had any fault in causing the July 5, 2021 accident.

### *The Board's Burden of Proof*

Having found above, that Progressive has shown that there is no factual support for the proposition that its driver, Robinson, was at fault in causing this accident, pursuant to La.Code Civ.P. art. 966, the burden is shifted to the Board to prove it can produce factual evidence to support that Robinson had some comparative fault. The Board attempts to do so by raising two arguments.

### *Robinson's Alleged Inattentiveness*

The Board first contends that a fact finder could find that Robinson was inattentive in his driving. The Board argues that a fact finder could base its finding on Robinson's alleged failure to take any action to avoid the collision.

As highlighted above, the evidence in the record shows that Robinson was traveling at night on a dark black-top roadway when he struck a black cow standing in his lane of travel. Lutrell testified that Robinson was paying attention to the road ahead of him and that there was no possible way that either of them knew or should

6

have known a cow was in the roadway, thus possibly enabled Robinson to avoid the accident by slowing down or swerving. Both Robinson and Luttrell testified that Robinson was looking straight ahead with his headlights illuminated. Luttrell testified that he had no criticism of the way Robinson was driving that night, and he stated that there was nothing Robinson could have done to prevent the accident. Additionally, Robinson's testimony corroborates that of Luttrell.

Here, rather than pointing to contradictory evidence of the above testimonies, or providing their own independent evidence, i.e. affidavits, sworn deposition testimony, or other evidence, the Board merely argues that the trier of fact, either judge or jury, possibly *could* or *may* find that Robinson could have avoided the accident or lessened the severity of the impact had he slowed down or swerved. We find this argument is mere speculative hindsight.

Speculation as to Robinson's failure to slow down or swerve in the correct direction, at the correct time, and at the correct amount of speed, when presented with a "split second" between observing the cow in the roadway and the impact, is speculative, and, thus, we find could not reasonably indicate fault as to the specific facts of this case. We note that nearly any accident could be lessened or even avoided if the driver had "precognitively exhibit[ed] perfection in performance" when presented with such an unknown hazard. However, failure to do so, when there is no evidence that Robinson should have–or even could have–done so, does not equate to raising a genuine issue of material fact.

In summary, the Board asserts that Robinson must have been inattentive and thus must be at fault because he failed to take any evasive action. We find that it is unreasonable to have such action required from Robinson. Thus, by law, the Board must produce actual evidence that Robinson was inattentive. We find it has failed to do so.

7

*Robinson's Fault from Presentation of Flashing Headlights*

Next, the Board argues that Robinson allegedly ignored the implications when a vehicle in the opposing lane flashed its headlights at him before he struck the cow. Thus, the Board argues that Robinson acted unreasonably by doing nothing when he saw the vehicle flash its headlights approximately a half a mile before the collision.

First, the Board's argument misconstrues the evidence in the record. There is conflicting testimony regarding whether a vehicle in the opposing lane even flashed its headlights at Robinson's vehicle. Robinson's testimony was that he was not sure if a vehicle from the opposing lane had flashed its headlights. According to his testimony, Robinson asked Luttrell if the other vehicle had flashed its headlights at him or if the opposing lane vehicle was riding over a bump. According to Robinson, Luttrell's response indicated uncertainty as well. Contradictorily, Luttrell testified that the conversation between him and Robinson regarding the flashing headlights resulted in their conclusion that a police officer must be ahead. We find this contradiction does not equate to an issue of material facts.

Additionally, flashing headlights from a vehicle in the opposing lane can indicate a variety of things: a police presence or a speed trap is ahead; your vehicle is difficult to see because your headlights are not illuminated; your high beam headlights are illuminated and distracting the drivers in the opposing lane; or, granted perhaps, that there is a potential danger ahead. As such, flashing headlights are not a universal indication that Robinson should slow down or take precautions.

Given the above, we find that there is no clear evidence that a vehicle flashed its headlights at Robinson. Moreover, the fact that flashing headlights could mean one thing relevant to this case does not dictate a finding that failure to correctly interpret flashing headlights, given the multitude of potential meanings, could reasonably be found to indicate comparative fault. The evidence in the record is that

8

Robinson was unsure whether a vehicle in the opposing lane flashed its headlights at him or that Robinson and Lutrell interpreted the alleged flashing lights to indicate a police presence ahead. Therefore, we find Robinson's failure to correctly interpret the meaning of another vehicle flashing its headlights at him does not raise a genuine issue of material fact and thus, is not sufficient evidence for the Board to carry its burden to produce actual evidence of comparative fault by Robinson in causing the accident.

Accordingly, we find this argument, as well as the Board's first argument regarding Robinson's alleged potential to be found inattentive, are without merit.

## CONCLUSION:

After a de novo review, we find no error by the trial court in granting Jalen Robinson and Progressive Security Insurance Company's motion for summary judgment. Progressive, as movant but not the bearer of the burden of proof at trial on whether Robinson was comparatively negligent, has successfully pointed out that there is no factual support for a finder of fact to find that Robinson had any fault in this accident. It did so by presenting the uncontradicted sworn testimonies of the only two eyewitnesses, Robinson and Luttrell. These testimonies indicate that Robinson was paying proper attention to the roadway ahead of him; that he was traveling at a safe speed; and that he acted in a reasonable manner when he was suddenly presented with an unexpected and unanticipated situation of a black cow, the first cow in a herd of cattle, on a black unlit roadway, in his lane of travel, in the middle of the night.

Progressive, having successfully carried their initial burden, pursuant to La.Code Civ.P.art. 966, the burden then shifts to the Board to present evidence, not mere speculation and argument, that show it can produce at trial factual support that

Robinson had some comparative fault. The record shows that it failed to provide any such proof.

Defendant, State of Louisiana, through the Board of Supervisors of the University of Louisiana System, raises one assignment of error. It argues that the trial court erroneously granted defendants, Jalen Robinson, and Progressive Security Insurance Company's motion for summary judgment, finding that there is no evidence produced showing that Jalen Robinson was comparatively at fault for this motor vehicle accident. As stated hereinabove, we find no merit to the assertion that the trial court's granting of the motion was in error.

## **DECREE:**

The judgment of the trial court granting defendants, Jalen Robinson and Progressive Security Insurance Company's motion for summary judgment, dismissing defendant driver, Jalen Robinson, and Progressive Security Insurance Company from the case with prejudice, is affirmed.

Costs of these proceedings are assessed to the State of Louisiana, through the Board of Supervisors of the University of Louisiana System, in the amount of $2,271.10.

**AFFIRMED.**